IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-00219-PAB-CBS

DOUGLAS A. MAYHEW,
        Plaintiff,
v.

CHERRY CREEK MORTGAGE CO., INC., a Colorado corporation,
NORA ZIEL, individually, and in her official capacity,
MIKE SMITH, individually, and in his official capacity,
HEATHER BRADSHAW, individually, and in her official capacity,
CHRISTINE RYCHLEC, individually, and in her official capacity,
SECURITY TITLE GUARANTY CO., a Colorado corporation,
WHITNEY WINICK, individually, and in her official capacity,
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware corporation
d/b/a MERS,
WELLS FARGO BANK, N.A., a Florida corporation, resident of South Dakota and
successor by merger to Wells Fargo Home Mortgage Inc. f/k/a Norwest Mortgage, Inc.,
WELLS FARGO ASSET SECURITIES CORP., a Maryland corporation,
JOAN MILLS, individually, and in her official capacity,
BRADLEY DAVIS, individually, and in his official capacity,
BRICE, VANDER LINDEN & WERNICK, P.C., a Texas professional corporation,
JOE LOZANO, JR., individually, and in his official capacity,
WACHOVIA BANK, N.A., a North Carolina corporation, as Trustee for WFMBS 2005-
14,
US BANCORP, a Delaware corporation d/b/a US Bank, N.A., a successor Trustee to
Wachovia; WFMBS 2005-14,
CASTLE MEINHOLD & STAWIARSKI, LLC, a Colorado limited liability company,
BRITNEY BEALL-EDER, individually, and in her official capacity,
P.C. WOLF, individually, and in his official capacity,
ERICKA OLSON, individually, and in her official capacity,
LAUREN SMITH, individually, and in her official capacity,
JENNIFER ROGERS, individually, and in her official capacity,
GUARANTY BANK AND TRUST COMPANY, a Colorado corporation,
ABBY LARSEN, individually, and in her official capacity,
CIT GROUP/CONSUMER FINANCE, INC., a Delaware corporation,
NATIONWIDE TITLE CLEARING, INC., a Florida corporation,
DUSTI WOODBURY, individually, and in his official capacity,
INDYMAC BANCORP, INC., a California corporation d/b/a Indymac Bank. F.S.B.,
RICHARD G. GEBHART, individually, and in his official capacity,
JOHN AND JANE DOES 1-1001 . . . , a/k/a unknown trustee(s), investors, mortgage
aggregators (wholesalers), mortgage originators, loan sellers, trustees(s) [sic] of pooled
assets, trustee(s) for holders of collateralized mortgage obligations,

1

Defendants.

_____

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

_____

Magistrate Judge Craig B. Shaffer

This civil action comes before the court on:

(1)    "Plaintiff's Verified Motion to Dismiss Action Against Certain Defendants Pursuant to Fed. R. Civ. P. 41" (filed July 9, 2009) (doc. # 98);

(2)    "Defendant Security Title Guaranty Co.'s Motion to Dismiss and Joinder in Various Co-Defendants' Pending Motions to Dismiss" (filed May 1, 2009) (doc. # 63);

(3)    "Defendant Brice, Vander Linden & Wernick, P.C. and Joe M. Lozano, Jr.'s Motion to Dismiss Complaint Pursuant to Fed. R. Civ. P. 12(b)(6), or, in the Alternative, Motion for Summary Judgment as to Claims Against Brice, Vander Linden & Wernick, P.C. and Joe M. Lozano, Jr." (filed April 17, 2009) (doc. # 47), joined by Defendant Wachovia Bank, N.A. on April 21, 2009 (doc. # 51);

(4)    "Defendant P.C. Wolf's Motion to Dismiss Pursuant [to] Rules 12(b)(2), 12(b)(5) and 12(b)(6), Fed. R. Civ. P." (filed April 3, 2009) (doc. # 33);

(5)    "Defendant Wells Fargo Bank, N.A.; Wells Fargo Asset Securities Corporation; Mortgage Electronic Registration Systems; Joan Mills, and Bradley Davis's Motion to Dismiss Pursuant to Rule 12(b)(6), Fed. R. Civ. P." (filed April 3, 2009) (doc. # 29), joined by Defendants Cherry Creek Mortgage Company, Inc., Ziel, Smith, Bradshaw, and Rychlec on April 20, 2009 (doc. # 48), joined by Defendant Wachovia Bank, N.A. on April 21, 2009 (doc. # 51), and joined by Defendant Guaranty Bank and Trust Company on May 14, 2009 (doc. # 73); and

(6)    "Motion for a More Definite Statement and to Dismiss the Claims Against Ziel, Bradshaw, Rychlec, and Smith in their Individual Capacities" (filed March 31, 2009) (doc. # 24), joined by Defendant Wachovia Bank, N.A. on April 21, 2009 (doc. # 51) and joined by Defendant Guaranty Bank and Trust Company on May 14, 2009 (doc. #73).[1]

Pursuant to the Order of Reference dated February 10, 2008 (doc. # 5) and the

_____

[1]    The portion of the Motion seeking a More Definite Statement was withdrawn.  (*See* Courtroom Minutes/Minute Order (doc. # 94)).

memoranda dated March 31, 2009 (doc. # 25), April 3, 2009 (docs. # 30 and # 34), April 20, 2009 (doc. # 50), May 1, 2009 (doc. # 64), and August 31, 2009 (doc. # 103), these matters were referred to the Magistrate Judge.  Mr. Mayhew has not filed any response to the Motions, even after being afforded numerous extensions of time to either file an Amended Complaint or respond to the pending Motions.  (*See, e.g.,* docs. # 114, # 107, # 97,  # 94, # 68, # 61, # 54, # 36, # 26,).  The court has reviewed the Motions, the pleadings, the entire case file, and the applicable law and is sufficiently advised in the premises.

I.      Statement of the Case

Proceeding *pro se*, Mr. Mayhew challenges a Colorado Public Trustee foreclosure.  (*See generally* Complaint (doc. # 1)).  Mr. Mayhew was the owner of real property located at 307 LaBelle Road, Boulder, CO 80302 (the "Property").  (*See* Complaint at ¶¶ 1, 56).  Mr. Mayhew constructed a house on the Property, financed through several construction loans from various lenders.  (*See* Complaint at ¶ 57).  In the fall of 2005, Mr. Mayhew and his wife, Kimberly Mayhew, obtained new financing for the Property through Defendant Cherry Creek Mortgage Co., Inc. ("Cherry Creek"). (*See* Complaint ¶¶ 57-58, 61).  This financing took the form of a Note in the amount of $999,999.00 secured by a Deed of Trust (the "Loan").  (*See* Exhibits A and B to Motion to Dismiss (docs. # 29-2 and # 29-3) (copies of Note and Deed of Trust)).  Mr. and Mrs. Mayhew's marriage later ended in divorce.  Payments on the Loan admittedly ceased. (*See* Complaint at ¶¶ 72(f), 74(d), 76(d), 78(c); *see also, e.g.,* doc. # 47-5).

In Colorado, consensual liens against real property are created by

3

recordation of a deed of trust granted by the lender to the public trustee of the county where the property is situated. Foreclosure of such liens is a hybrid process governed by statute. The process involves issuance of orders by the state district court authorizing and confirming the sale. C.R.C.P. 120; § 38-38-105, C.R.S.  However, the process of conducting the sale and the parties' rights in such process are largely administrative.

Upon default, if the deed of trust so authorizes, the lender or holder of the note may direct the public trustee to sell the property at a foreclosure sale. § 38-38-101(1), C.R.S. The lender must also seek an order from the state district court authorizing the sale under Rule 120. Once a sale is authorized, the public trustee advertises and conducts the sale. § 38-38-101(4), C.R.S.  The property is sold to the highest bidder who receives a Certificate of Purchase. Often, the purchaser is the holder of the deed of trust who bids all or part of the debt owed by the borrower.

. . . After sale, the borrower and any junior lienholders may redeem the title to the property by paying, to the holder of the Certificate of Purchase, the sum for which the property was sold with interest from the date of sale, together with any taxes paid or other proper charges See § 38-38-101 to § 38-38-103, C.R.S. . . . If the redemption period passes, the holder of the Certificate of Purchase may seek an order confirming the sale and obtain a Trustee's Deed.

*Beeler Properties, LLC v. Lowe Enterprises Residential Investors, LLC,* 2007 WL 1346591 * 2 (D. Colo. May 7, 2007).[2]

Upon default on the Loan, Wachovia, as Trustee for WFMBS 2005-14, initiated foreclosure proceedings.  (*See, e.g.*, doc. # 47-7 at ¶ 5).  The foreclosure was assigned foreclosure number 08-21442 and the Notice of Election and Demand for Sale was recorded in the real property records of the Boulder Country Clerk and Recorder on April 2, 2008 at reception number 2920270.  (*See* www.recorder.bouldercounty.org, reception number 2920270).  On August 29, 2008, the District Court, Boulder County, Colorado granted Wachovia's motion for an order pursuant to C.R.C.P. 120 authorizing the Public Trustee to sell the Property, over Mr. Mayhew's challenge to the proceeding.

---

[2]     Copies of any unpublished decisions cited in this Recommendation are attached to the Recommendation.

(*See* doc. # 47-11 (Boulder District Court case number 08-CV-2368)).  The Boulder

District Court found that Mr. Mayhew lacked standing to challenge the C.R.C.P. 120

proceeding as he was not a signatory on the note that was in default.  (*See* doc. # 47-

11).  The foreclosure sale took place on February 4, 2009 and the Public Trustee's

Certificate of Purchase from the foreclosure was recorded in the real property records of

the Boulder Country Clerk and Recorder on February 5, 2009 at reception number

2977352.  (*See* www.recorder.bouldercounty.org, reception number 2977352).  On

February 27, 2009, a confirmation deed was issued to U.S. Bank, N. A., as successor

trustee to Wachovia.  This deed was recorded in the real property records of the

Boulder Country Clerk and Recorder on February 27, 2009, at reception number

2981901.  (*See* www.recorder.bouldercounty.org, reception number 2981901).[3]


II.      Summary of Pending Motions

First, the court will recommend that "Plaintiff's Verified Motion to Dismiss Action

Against Certain Defendants Pursuant to Fed. R. Civ. P. 41" be granted.  In light of the

court's recommendation that Mr. Mayhew's Motion to voluntarily dismiss certain

Defendants be granted, Defendants P.C. Wolf, Brice, Vander Linden & Wernick, P.C.,

---

[3]      The Deed of Trust and foreclosure related documents were recorded in
the Boulder County Clerk & Recorder's office.  On a motion to dismiss pursuant to Rule
12(b)(6), the court may consider materials in addition to the pleadings if such materials
are public records or are otherwise appropriate for the taking of judicial notice.  Such
items include orders, items appearing in the court record, and records filed in state
court.  *See Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1279 n.1 (10th Cir.
2004); *Wyser-Pratte Management Co., Inc. v. Telxon Corp.*, 413 F.3d 553, 560 (6th Cir.
2005) (District Court may consider documents referred to in plaintiff's complaint and
central to his claim, public records, matters of which a court may take judicial notice and
decisions of governmental agencies) (citations omitted).

Joe M. Lozano, Jr., Bradley Davis, Guaranty Bank and Trust Company, Smith,

Bradshaw, and Rychlec, among others, will no longer be Defendants in the case and,

thus, their Motions may properly be denied as moot.  To the extent that their Motions

were joined by other Defendants (*see* docs. # 73, # 63, # 51, # 48), the court will

proceed to evaluate Defendants' Motions as to the remaining Defendants: Security Title

Guaranty Company, Wachovia Bank, N.A. ("Wachovia"), Wells Fargo Bank, N.A.

("Wells Fargo"), Wells Fargo Asset Securities Corporation ("WFASC"), Mortgage

Electronic Registration Systems ("MERS"), Joan Mills ("Mills"), Cherry Creek, and Nora

Ziel ("Ziel").


III.    Standard of Review

Defendants move for dismissal of the Complaint pursuant to Fed. R. Civ. P. 8

and 12(b)(6), and for summary judgment pursuant to Fed. R. Civ. P. 56.

> Dismissal of a claim under Rule 12(b)(6) is appropriate where the
> plaintiff fails to state a claim upon which relief can be granted.  For a
> complaint to state a claim it must contain a short and plain statement of
> the claim showing that the pleader is entitled to relief. Rule 8(a)'s short
> and plain statement mandate requires that a plaintiff allege enough factual
> matter that, taken as true, makes his claim to relief . . . plausible on its
> face.
> The court's function on a Rule 12(b)(6) motion is not to weigh
> potential evidence that the parties might present at trial, but to assess
> whether the plaintiff's complaint alone is legally sufficient to state a claim
> for which relief may be granted. In doing so, the Court must accept all the
> well-pleaded allegations of the complaint as true and must construe them
> in the light most favorable to the plaintiff. However, the Court need not
> accept conclusory allegations.
> Generally, [s]pecific facts are not necessary; the statement need
> only give the defendant fair notice of what the claim is and the grounds
> upon which it rests. However, where the well-pleaded facts do not permit
> the court to infer more than the mere possibility of misconduct, the
> complaint has alleged-but it has not shown-that the pleader is entitled to

6

relief. Even though modern rules of pleading are somewhat forgiving, a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory. The plausibility standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible.

*Jordan-Arapahoe, LLP v. Board of County Commissioners of the County of Arapahoe*, 2009 WL 2924777 * 2 (D. Colo. Sept. 9, 2009) (internal quotation marks and citations omitted).

> Summary judgment is warranted under Federal Rule of Civil Procedure 56(c) when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. A disputed fact is material if under the relevant substantive law it is essential to proper disposition of the claim. Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. An issue is genuine if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.

*Fuchs v. Sanders*, ___ F. Supp. 2d ___, 2009 WL 3077606 (D. Colo. 2009) (internal quotation marks and citations omitted).

IV.     Analysis

A.     Mr. Mayhew's First Claim for Relief

In his First Claim for Relief, Mr. Mayhew seeks "punitive and/or exemplary damages, treble damages and the enforcement of criminal penalties, including legal fees and costs" under, *inter alia*, the Federal Real Estate Settlement and Procedures Act of 1974 ("RESPA"), 12 U.S.C. § 2601 *et seq.* (*See* Complaint at ¶ 72).

1.      No Private Right of Action under 12 U.S.C. § 2604(c)

Mr. Mayhew alleges that Defendants violated RESPA, 12 U.S.C. § 2604(c), by

not providing him with a "Good Faith Estimate." (*See* Complaint at ¶¶ 72 a. – c.).

Section 2604(c) provides that "[e]ach lender shall include . . . a good faith estimate of

the amount or range of charges for specific settlement services the borrower is likely to

incur in connection with the settlement as prescribed by the Secretary." 12 U.S.C. §

2604(c).  However, § 2604(c) does not provide a private right of action for such an

alleged violation.  *See Delino v. Platinum Community Bank*, 628 F. Supp. 2d 1226, 1232

(S.D. Cal. 2009) ("Section 2604 does not provide a private civil remedy for a failure to

provide a good faith estimate");  *Reese v. 1st Metro. Mortg. Co.*, 2003 WL 2245658, *15

(D. Kan. Oct. 28, 2003) ("Sections 2603 and 2604 outline the disclosures which lenders

must provide borrowers, but they do not create a private right of action against

mortgage lenders who fail to make such disclosures.");[4]  *Carr v. Home Tech Co., Inc.*,

476 F. Supp. 2d 859, 869 (W.D. Tenn. 2007) ("no private right of action exists for

violations of § 2604(c)") (citing *Collins v. FMHA-USDA*, 105 F.3d 1366, 1367-68 (11th

---

[4]              Section 2605 originally authorized a private cause of
action for damages for failure to provide the required
disclosures. The present Section 2604(c), which replaced
the original Section 2605, does not provide a private right of
action. The fact that Congress eliminated this provision for a
private cause of action strongly suggests that it intended to
eliminate a private damage remedy for a violation of Section
2604. Moreover, other provisions of RESPA explicitly provide
private civil remedies, thus suggesting that Congress did not
intend a private remedy for violations of Sections 2603 or
2604.

*Reese*, 2003 WL 22454658 at 22454658, *4 (citations and footnote omitted).

Cir. 1997) (holding no implied private right of action exists for violations of § 2604(c)).

Mr. Mayhew's claims for violations of U.S.C. § 2604(c) thus fail to state a claim for

which relief can be granted and may properly be dismissed pursuant to Rule 12(b)(6).

    2.    Claims under 12 U.S.C. § 2605(b),(c), and (e)(3) Are Time Barred

    RESPA sets forth the time limitations for bringing actions under § 2605:

> Any action pursuant to the provisions of section 6, 8, or 9 [12 USCS §
> 2605, 2607, or 2608] may be brought in the United States district court or
> in any other court of competent jurisdiction, for the district in which the
> property involved is located, or where the violation is alleged to have
> occurred, within 3 years in the case of a violation of section 6 [12 USCS §
> 2605] and 1 year in the case of a violation of section 8 or 9 [12 USCS §
> 2607 or 2608] from the date of the occurrence of the violation. . . .

12 U.S.C. § 2614.  The loan at issue in this case was closed on September 15, 2005.

*See Snow v. First American Title Ins. Co.*, 332 F.3d 356, 359 (5th Cir. 20030 ("'the date

of the occurrence of the violation' refers to the closing").  Mr. Mayhew filed this action on

February 4, 2009, more than three years after the violation is alleged to have occurred.

Mr. Mayhew has not alleged or argued that equitable tolling applies.  *See Mullinax v.*

*Radian Guaranty, Inc.*, 199 F. Supp. 2d 311, 328 (M.D. N.C. 2002) ("RESPA's statute of

limitations period is therefore subject to equitable tolling").  Pursuant to the applicable

three-year time limitation, Mr. Mayhew's claims under Section 2605 *et seq.* are properly

dismissed as time barred.[5]

---

[5]    Although the expiration of the statute of limitations is an affirmative
defense, where the complaint or referenced documents clearly indicate that a claim is
time-barred, the court may adjudicate the defense on a motion to dismiss.  *Aldrich v.*
*McCulloch Properties, Inc.*, 627 F.2d 1036, 1041 (10th Cir. 1980) (noting that a statute
of limitations defense is appropriately resolved pursuant to a Fed.R.Civ.P. 12(b) motion
"when the dates given in the complaint make clear that the right sued upon has been

3.    12 U.S.C. § 2605(b),(c), (e)(3) Applicable Only to "Loan Servicers"

To the extent that Mr. Mayhew has raised claims under 12 U.S.C. § 2605(b)(c) and (e)(3) for failing "to provide Mr. Mayhew with the required fifteen (15) day notice of change of loan servicer upon the (re)assignments of the subject first Mortgage loan, and second Mortgage loan/line of credit . . ." (see Complaint, at ¶ 72(d)) and for making "negative reports to consumer reporting agencies regarding Mr. Mayhew" (see Complaint at ¶ 72 (e)), he fails to state a claim under 12 U.S.C. § 2605(b)(c) or (e)(3).

Sections 2605 *et seq.*, pertain to duties and obligations of loan servicers. This section defines a "servicer" as "the person responsible for servicing of a loan," and defines "servicing" as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . ." 12 U.S.C. 2605(i)(2) and (3).  Sections 2605(b) and (c) require that a "servicer" provide the borrower with notice of a sale or transfer of the "servicing of the loan" and that a "transferee servicer" to whom "the servicing" of a loan is sold or transferred likewise "notify the borrower of any such assignment, sale or transfer."   Section 2605(e)(3) provides that a service provider may not provide information regarding any overdue payments owed by the borrower to any consumer reporting agency if the service provider receives a qualified written request from the borrower relating to a dispute regarding the borrower's payment.  12 U.S.C. § 2605(e)(3).  Mr. Mayhew has not alleged that all of the Defendants are loan servicers as defined by the statute.  Thus, Mr. Mayhew fails to state a claim under 12 U.S.C. § 2605(b), (c), or (e)(3) against the Defendants he has not alleged are loan servicers.

---

extinguished").

B.      Mr. Mayhew's Second Claim for Relief

In his Second Claim for Relief, Mr. Mayhew seeks "actual damages, statutory damages, reasonable legal fees and costs . . ." under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, including §§ 1635(a)(b) and 1635(f)(g); 15 U.S.C. § 1640(a)(e); 15 U.S.C. § 1641(c); 15 U.S.C 1638(b)(1); 12 U.S.C. § 2604; and Federal Reserve Board Regulation Z (Reg. Z) 12 C.F.R. § 226.1 *et seq.*, including §§ 226.15(a)(1-3), 226.15(d)(1), 226.17, 226.18, 226.23(a)(1-3) and 226.23(d)(1) for alleged violations of his right to rescind or cancel the subject loan transaction ("TILA claims").  (*See* Complaint at ¶¶ 74 a.– c.).  Mr. Mayhew's TILA Claims fail to state a claim upon which relief can be granted.

1.      Residential Mortgage Transactions Exempt from Right to Rescind

TILA and Regulation Z, TILA's implementing regulations, provide protections for consumers engaging in certain types of credit transactions.  Mr. Mayhew invokes TILA's rescission provision, 15 U.S.C. § 1635, in an attempt to rescind his mortgage on the property.  (See Complaint at ¶¶ 76, 76 c.– d.).  That section provides rescission rights

> in the case of any consumer credit transaction . . . in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended.

15 U.S.C. § 1635(a).  However, Mr. Mayhew's loan was exempt from the three-day right of rescission as provided by 15 U.S.C. § 1635(e)(1) and its implementing regulation, Regulation Z, 12 C.F.R. § 226 *et seq.*, as a "residential mortgage transaction."  Section 1635 sets forth in pertinent part:

11

(a) Disclosure of obligor's right to rescind. Except as otherwise provided in this section, in the case of any consumer credit transaction . . . in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this title [15 USCS §§ 1601 et seq.], whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so.

(e) Exempted transactions; This section does not apply to--

(1) a residential mortgage transaction as defined in section 103(w) [15 USCS § 1602(w)];

Section 1602(w) defines residential mortgage transactions as:

… a transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling.

Regulation Z, the implementing provision of 15 U.S.C. 1601 *et seq.*, also

recognizes a consumer's right to rescind but similarly exempts residential mortgage

transactions from the right to rescind provision:

(a) Consumer's right to rescind.

(1) In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction, except for transactions described in paragraph (f) of this section.

(f) Exempt transactions. The right to rescind does not apply to the following:

(1) A residential mortgage transaction

12 C.F.R. § 226.23(a)(1), (f)(1).  Mr. Mayhew's Loan meets the definition of a

12

"residential mortgage transaction" under 15 U.S.C. § 1602(w).

Mr. Mayhew's Loan was a "residential mortgage transaction" exempt from rescission, in that Mr. Mayhew obtained an initial construction loan and later obtained a conventional loan to satisfy the construction loan and to provide permanent financing. Thus, Mr. Mayhew's loan was exempt from the rescission requirement pursuant to section 226.23(f).  *See, e.g., Barrett v. JP Morgan Chase Bank, N.A.,* 445 F.3d 874, 879 (6th Cir. 2006) (TILA excepts four transactions from the general right to rescind, including "residential mortgage transactions," which are financing agreements arising from the acquisition or initial construction of a home);  *In Re Schweizer*, 354 B.R. 272, 280 (D. Idaho) ("The right of rescission does not apply to residential mortgage transactions.") (citing 15 U.S.C. §§ 1635(e)(1));  *Perkins v. Central Mortgage Co.*, 422 F. Supp. 2d 487, 489 (E.D. Pa. 2006) ("The right to rescind does not apply to residential mortgage transactions");  *Briggs v. Provident Bank*, 349 F. Supp. 2d 1124, 1129-30 (N.D. Ill. 2004) ("Under section 1635(e) of TILA certain transactions are exempt from the right of rescission and disclosure requirements of section 1635, including a residential mortgage transaction as defined in section 1602(w).").  For this reason, Mr. Mayhew's TILA claims may properly be dismissed pursuant to Rule 12(b)(6) for failure to state a claim for which relief can be granted.

2.      Right to Rescind Terminated with Foreclosure Sale of Property

Any and all rights Mr. Mayhew may have had to rescind the Loan were also

extinguished when the note was foreclosed and the Property sold in foreclosure.  The

sale or transfer of a consumer's interest in property terminates the consumer's right to

rescind.  *See* 15 USCS § 1635(f); 12 CFR § 226.23(a)(3).  Here, the Property was sold

at a foreclosure sale on February 5, 2009 and title to the Property vested in the holder

of the Certificate of Purchase by operation of law after the expiration of the redemption

period.  *See* C.R.S. § 38-38-501.  Any rescission rights which Mr. Mayhew claims here

were terminated by operation of law as a result of the foreclosure sale.  *See Jones v.*

*Saxon Mortg.*, 537 F.3d 320, 324-325 (4th Cir. 1998) (right of recission under TILA

expired upon foreclosure sale of property in question);  *Hallas v. Ameriquest Mortg. Co.*,

406 F. Supp. 2d 1176, 1183 (D. Or. 2005) (foreclosure sale terminated plaintiff's right of

recission);  *In re Hall*, 188 B.R. 476, 484 (Bankr. D. Mass. 1995) (claim for recission

under TILA barred by foreclosure sale).  For this reason also, Mr. Mayhew fails to state

a claim upon which relief can be granted under TILA.


3.      TILA's Time-Bar

Mr. Mayhew's claim for damages under TILA also fails as time-barred because

he filed this case more than one year after the loan transaction occurred.  An action for

damages under TILA must be filed "within one-year from the date of the occurrence of

the violation." 15 U.S.C. § 1640(e).  *See also Heil v. Wells Fargo Bank, N.A.*, 298 Fed.

Appx. 703, 706 (10th Cir. (Utah) Oct. 9, 2008) (suit barred by one-year statute of

limitations period of § 1640(e)).  The limitations period on a TILA claim begins running

14

on the date the loan documents are signed.  *See Meyer v. Ameriquest Mortgage Co.*, 342 F.3d 899, 902 (9th Cir. 2003).  *See also Delino*, 628 F. Supp. 2d at 1233 (one year statute of limiations "typically run[s] form the date of the loan execution");  *Tucker v. Beneficial Mortg. Co.*, 437 F. Supp. 2d 584, 589 (E.D.Va. 2006) ("the date of the occurrence of the violation is not later than the date the plaintiff enters the loan agreement") (internal quotation marks and citation omitted).  Here, it is undisputed that Mr. Mayhew entered into the Loan transaction in 2005.  Mr. Mayhew's Complaint was filed in February of 2009, more than three years later.  Therefore, from the face of the Complaint, Mr. Mayhew's claim for damages under TILA is time-barred under TILA's statute of limitation, 15 U.S.C. § 1640(e) *et seq.*, unless the statute of limitation has been equitably tolled.  *See Heil*, 298 Fed. Appx. at 706 (citing *Ellis v. Gen. Motors Acceptance Corp.*, 160 F.3d 703, 706-08 (11th Cir.1998) (citing cases and recognizing all courts directly considering the issue have decided TILA is subject to equitable tolling)).  Mr. Mayhew has not alleged or argued that equitable tolling applies.  Mr. Mayhew's TILA claims thus fail as a matter of law as barred by the one-year limitations period of § 1640(e) and are properly dismissed pursuant Rule 12(b)(6).

C.      Mr. Mayhew's Third Claim for Relief

        Mr. Mayhew seeks "punitive and/or exemplary damages, treble damages and the enforcement of criminal penalties" under, *inter alia*, the federal Home Ownership and Equity Protection Act of 1994 ("HOEPA"), 15 U.S.C. § 1639 *et seq.*, including Regulation Z, 12 C.F.R. §§ 226 *et seq.* and 226.32; TILA 15 U.S.C. §§ 1611 *et seq.* and 1640 *et seq.*  (*See* Complaint at ¶ 76, 76 c.).

HOEPA is an amendment to TILA codified at 15 U.S.C. § 1639, enacted in 1994 to protect consumers against various practices in connection with certain high interest rate loans, which creates "a special class of regulated loans that are made at higher interest rates or with excessive costs and fees." *Lynch v. RKS Mortgage, Inc.*, 588 F. Supp. 2d 1254, 1260 (E.D. Cal. 2008) (internal quotation marks and citation omitted). In order to be subject to the protections afforded by HOEPA, one of two factors must be established. "Either the annual percentage rate of the loan at consummation must exceed by more than 10 percent the applicable yield on treasury securities, or the total points and fees payable by the consumer at or before closing has to be greater than 8 percent of the total loan amount, or $400.00." *Lynch*, 588 F. Supp. 2d at 1260 (citing 15 U.S.C. § 1602(aa)(1) & (3); 12 C.F.R. § 226.32(a)(1)). *See also D.M. Johnson Family Trust v. Countrywide Home Loans*, 2009 WL 3615690 * 6 (D. Utah Oct. 28, 2009) ("HOEPA applies if the interest rate of the loan exceeds a certain threshold, or if the total points and fees exceed eight percent of the loan.").

First, Mr. Mayhew has pled no facts that would provide a basis for the application of HOEPA to his Loan. From the face of the Complaint, Mr. Mayhew's purported HOEPA claim fails because the Loan does not meet the statutory requirements of HOEPA. Second, TILA's one-year statute of limitations also applies to HOEPA claims. *See* 15 U.S.C. §§ 1639, 1640(e). *See also McDaniel v. Denver Lending Group, Inc.*, 2009 WL 1873581 * 14 (D. Colo. June 30, 2009) ("because HOEPA is an amendment of TILA, a one-year statute of limitations applies"). As Mr. Mayhew obtained the Loan in 2005, filed the Complaint in 2009, and has not alleged or argued any facts to support equitable tolling, his HOEPA claim is time barred. *McDaniel*, 2009 WL 1873581 at * 14

16

("Plaintiff must provide a factual basis to toll the statute.").  Mr. Mayhew's HOEPA claim

fails as a matter of law and is properly dismissed pursuant to Rule 12(b)(6).

D.      Mr. Mayhew's Fourth Claim for Relief

Mr. Mayhew seeks "punitive and/or exemplary damages, treble damages and the

enforcement of criminal penalties" pursuant to "the federal Fair Debt Collection

Practices Act of 1990 (FDCPA), 28 U.S.C. § 3001 *et seq.* [sic]" (*See* Complaint at ¶

78).[6]  Mr. Mayhew alleges that Defendants committed numerous unspecified violations

of the FDCPA.  (*See* Complaint at ¶¶ 78a. – c.).

Under the FDCPA, "[a] debt collector may not use unfair or unconscionable

means to collect or attempt to collect any debt." 15 U.S.C. § 1692f.  "Unfair or

unconscionable" is defined to include "[t]he collection of any amount (including any

interest, fee, charge or expense incidental to the principal obligation) unless such

amount is expressly authorized by the agreement creating the debt or permitted by law."

15 U.S.C. § 1692f(1).

First, Mr. Mayhew does not allege what specific subsections of the FDCPA were

violated.  A complaint must sufficiently allege "facts supporting all of the elements

necessary to establish an entitlement to relief under the legal theory proposed."  *Lane v.

Simon*, 495 F.3d 1182, 2007 WL 2136579, *3 (10th Cir. July 26, 2007).  Mr. Mayhew

has alleged insufficient facts to support a claim for violation of the FDCPA by any of the

Defendants.

---

[6]      The FDCPA is codified at Title 15 U.S.C. § 1692 *et seq.*, not at 28 U.S.C.
§ 3001, as alleged by Mr. Mayhew.

Second, "[c]ourts around the country have taken different positions on whether and when foreclosure activities are covered" by the FDCPA. *Rousseau v. Bank of New York*, 2009 WL 3162153 * 7 (D. Colo. Sept. 29, 2009). "The basic dispute is whether mortgage foreclosures constitute mere enforcement of a security interest by the lender, in which case they would appear to fall outside the scope of the Act, or whether foreclosures are an attempt to collect the underlying monetary debt, in which case they would fall within the scope of the Act." *Id.* *See also* 15 U.S.C. § 1692a(6) (a creditor who collects its own debt using its own name is not a "debt collector"); *Montgomery v. Huntington Bank*, 346 F.3d 693, 699 (6th Cir. 2003) (holding that a creditor's attempt to collect on its own debts, even through the use of a third party, is not covered by FDCPA); *HSBC Bank USA Nat. Ass'n. as Trustee v. Crowe*, 2007 WL 4557829 (D. Colo. 2007) (FDCPA not applicable to forcible entry and detainer following a foreclosure) (citing *Williams v. Countrywide Home Loans, Inc.*, 504 F. Supp. 2d 176, 190 (S.D. Tex. 2007) (mortgage lenders collecting their own debts are not "debt collectors," within the meaning of the FDCPA)); *Hulse v. Ocwen Federal Bank, FSB*, 195 F. Supp. 2d 1188, 1204 (D. Or. 2002) ("the activity of foreclosing on the property pursuant to a deed of trust is not the collection of a debt within the meaning of the FDCPA."). Mr. Mayhew has made no allegations pursuant to § 1692f(6) that Defendants had no right to possess the Property and, after the foreclosure sale, his FDCPA claim is not plausible. *See Rousseau*, 2009 WL at * 8 (holding plaintiff's invocation of § 1692f(6), alleging that Defendants had no right to possess plaintiff's property because they were not the proper holders of the debt, made plaintiff's claim "at least plausible.").

18

Third, because none of the Defendants are alleged to have "acted outside of the procedures of a non-judicial foreclosure," they were "not collecting a debt under the FDCPA."  *See Rousseau*, 2009 WL at ** 8-9  (quoting *Kee v. R-G Crown Bank*, — F. Supp. 2d —, 2009 WL 2852350 (D. Utah Sept, 2, 2009)).  Mr. Mayhew has failed to state a claim upon which relief can be granted pursuant to the FDCPA.

E.      Mr. Mayhew's Request for Injunctive Relief.

Mr. Mayhew seeks injunctive relief in the form of "a Mandatory Injunction requiring reconveyance of the subject real property to Mr. Mayhew, or in the alternative, [a] Final Judgment granting Mr. Mayhew Quiet Title in the subject property." (*See* Complaint at ¶ 80).

"In order to obtain a preliminary injunction, the moving party bears the burden of establishing that four factors weigh in his or her favor: (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest."  *Soesbe v. Countrywide Home Loans*, 2009 WL 3418212 * 1 (D. Colo. Oct. 20, 2009).  "[B]ecause a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal."  *Id.* (citation omitted).  "Furthermore, a court must be cognizant of the fact that there are three types of disfavored preliminary injunctions: (1) preliminary injunctions that alter the status quo-defined as the last uncontested status between the parties which preceded the controversy until the outcome of the final hearing; (2) mandatory preliminary injunctions which require a party to take some affirmative act rather than refrain from some act; and

19

(3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits."  *Soesbe*, 2009 WL 3418212 at * 1 (internal quotation marks and citation omitted).  "Before a court grants a disfavored preliminary injunction, a movant seeking such an injunction must make a heightened showing of the four factors."  *Id.* (citations omitted).

Mr. Mayhew has set forth none of these elements. Additionally, as explained in this Recommendation, above, there is no likelihood of success on the merits, as Mr. Mayhew's substantive claims are subject to dismissal under Rule 12(b)(6).  Further, Mr. Mayhew's request for injunctive relief is moot, as the Property was sold in a foreclosure sale on February 5, 2009.  Mr. Mayhew's claim for injunctive relief must be dismissed pursuant to Rule 12(b)(6).

F.     Claims under Colorado Consumer Protection Act, Unfair Practices Act, §§ 5-3.5-101 *et seq.* (Consumer Equity Protection Act), and C.R.S. § 38-40-105.

In his First and Third Claims for Relief, Mr. Mayhew also alleges violations of the Colorado Consumer Protection Act ("CCPA"), C.R.S. §§ 6-1-101 *et seq.*, §§ 6-1-105, 6-1-113, 6-1-114, 6-1-117, 6-1-1109, 6-1-1111, 6-1-1112, 6-1-1114, 6-1-1117, the Unfair Practices Act, 2 C.R.S. §§ 6-2-101 *et seq.*, §§ 6-2-108, and 6-2-111, 3 C.R.S. § 5-3.5-101 *et seq.* and § 5-3.5-103 (the Consumer Equity Protection Act), and C.R.S. § 38-40-105.  (*See* Complaint at ¶¶ 72, 76).  Mr. Mayhew seeks "punitive and/or exemplary damages, treble damages and the enforcement of criminal penalties." *See id.*

20

1.      Colorado Consumer Protection Act

To prove a private cause of action under the Colorado Consumer Protection Act

("CCPA"), a plaintiff must establish that a deceptive trade practice has occurred. C.R.S.

§ 6-1-113.  "Section 6-1-105(1)(e) requires that to establish a deceptive trade practice,

the plaintiff must show that a defendant 'knowingly makes a false representation.'"

*Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 147 (Colo.

2003).  "[A] false representation must either induce a party to act, refrain from acting, or

have the capacity or tendency to attract consumers."  *Rhino Linings*, 62 P.3d at 147.  "A

CCPA claim arises when a party knowingly makes a misrepresentation or makes a false

representation that has the capacity to deceive."  *Rhino Linings*, 62 P.3d at 147.

Section 6-1-105(1)(e) "requires that a plaintiff must establish not only that the

defendant engaged in a deceptive trade practice, but also that the defendant's

challenged practice significantly impacts the public as actual or potential consumers of

the defendant's goods, services, or property."  *Rhino Linings*, 62 P.3d at 149 (citing *Hall

v. Walter*, 969 P.2d 224, 234 (Colo. 1998)).  If one element of a CCPA claim is not met,

the entire claim fails.  *See Coors v. Security Life of Denver Ins. Co.*, 2003 WL

22019815, *4 (Colo. App. 2003) (stating that since element three of the CCPA could not

be proven as a matter of law, the court would leave for another day the issue of whether

the plaintiff had established element one of the CCPA), *rev'd in part on other grounds*,

112 P.3d 59 (Colo. 2005).

Mr. Mayhew has not pleaded a claim under the CCPA in his First Claim for

Relief.  Claims related to false representations allegedly made in violation of the CCPA

must be pled with particularity pursuant to Fed. R. Civ. P. 9(b).  *See Duran v. Clover*

21

*Club Foods Co.*, 616 F. Supp. 790, 793 (D. Colo.1985) (holding that "allegations of deceptive trade practices under the [CCPA] are subject to Rule 9(b)'s requirement of particularity").  Mr. Mayhew has failed to state any facts in the First Claim for Relief to indicate that a fraud was perpetrated.  Mr. Mayhew fails to allege what, if any, acts by any of the Defendants constituted a deceptive trade practice.  Nor has Mr. Mayhew alleged the number of consumers directly affected by the challenged practice or that anyone was falsely misled.  This lack of reference to any specific acts or omissions fails to adequately state a claim under the CCPA.

In his Third Claim for Relief, Mr. Mayhew alleges "false, purposely misleading and wrongfully inaccurate material statements and representations" were made.  (*See* Complaint at ¶ 76. b.).  Even if Mr. Mayhew adequately alleged a CCPA claim in his Third Claim for Relief, "[a] claim for relief under the Colorado Consumer Protection Act must be commenced within three years after: the false, misleading or deceptive act or practice occurred; the last in a series of such acts or practices occurred; or, the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the act or practice. It is tolled only if the defendant engaged in conduct calculated to induce Plaintiffs to refrain from or postpone the commencement of the action." *Brooks v. Bank of Boulder*, 891 F. Supp. 1469, 1481 (D. Colo. 1995) (citing C.R.S. § 6-1-115).  Mr. Mayhew's own allegations indicate that the "false, purposely misleading and wrongfully inaccurate material statements and representations" were made "prior to the closings of the subject" Loan.  (*See* Complaint at ¶ 76. b.).  The Loan was closed on September 15, 2005.  Mr. Mayhew filed this action on February 4, 2009, more than three years after the violation is alleged to have occurred, and has not

alleged or argued that equitable tolling applies.  Pursuant to the three-year time limitation to bring claims, Mr. Mayhew's claim under under the CCPA in his Third Claim for Relief is time barred.

In sum, Mr. Mayhew's CCPA claim is properly dismissed for failure to state a claim upon which relief can be granted.

2.      Unfair Practices Act

Mr. Mayhew has also alleged that Defendants have violated various sections of the Colorado Unfair Practices Act.  (*See* Complaint at ¶¶ 72, 76).  The Act "prohibits only 'geographically discriminatory' pricing."  *Venta, Inc. v. Frontier Oil and Refining Co.*, 827 F. Supp. 1526, 1528 (D. Colo. 1993).  The Act is designed to regulate acts performed for the purpose of injuring competitors or destroying competition, stating in part:

> It is unlawful for any person . . . with the intent to destroy the competition of any regular established dealer . . . to discriminate between different sections, communities or cities or portions thereof . . . by selling . . . a product . . . at a lower rate in one section, community, or city, or any portion thereof . . . than in another . . .

C.R.S. § 6-2-103(1).  "A reading of the Unfair Practices Act discloses that acts charged to be in violation thereof are such only if it is alleged and proved that they are performed for the purpose of injuring competitors or destroying competition."  *Miller's Groceteria Co. v. Food Distributors Association*, 107 Colo. 113, 115, 109 P. 2d 637 (Colo. 1941). There are no factual allegations in Mr. Mayhew's Complaint to support a claim under the Unfair Practices Act.  Thus, Mr. Mayhew's claim under the Unfair Practices Act is properly dismissed pursuant to Rule 12(b)(6).

3.      Consumer Equity Protection Act

Mr. Mayhew also lists 3 C.R.S. § 5-3.5-101 *et seq.* and § 5-3.5-103 (the

Consumer Equity Protection Act) in his Third Claim for Relief.  (*See* Complaint at ¶ 76).

Mr. Mayhew makes no specific allegations regarding a violation of § 5-3.5-101 *et seq.*

and § 5-3.5-103.  Further, § 5-3.5-201 provides:

> The attorney general and any obligor of a covered loan may enforce this
> article with respect to such covered loan in the manner provided for
> violations of the federal "Home Ownership and Equity Protection Act of
> 1994", 15 U.S.C. sec. 1639, and regulations adopted pursuant thereto by
> the federal reserve board, including, without limitation, 12 CFR 226.32, as
> set forth in the federal "Truth in Lending Act", 15 U.S.C. sec. 1640, and
> regulations adopted pursuant thereto by the federal reserve board,
> including the provisions on civil liability, class actions, rescission,
> correction, and bona fide error. Persons engaged in the purchase, sale,
> assignment, securitization, or servicing of covered loans shall be liable
> under this article for the action or inaction of persons originating such
> loans only in the manner and to the extent provided for violation of the
> federal "Home Ownership and Equity Protection Act of 1994" and the
> federal "Truth in Lending Act", 15 U.S.C. sec. 1641, and regulations
> adopted pursuant thereto by the federal reserve board.

Thus, for failure to set forth any specific allegations and for the same reasons that the

court recommends dismissal of Mr. Mayhew's claims under HOEPA and TILA, Mr.

Mayhew also fails to state a claim under § 5-3.5-101 *et seq.* upon which relief can be

granted.

4.      C.R.S. § 38-40-105

Mr. Mayhew has also alleged that Defendants have violated C.R.S. § 38-40-105.

(*See* Complaint at ¶ 76).  Section 38-40-105 prohibits unconscionable acts and

practices by participants in certain mortgage loan transactions.  While Mr. Mayhew has

listed a statutory subsection, he has not pleaded facts sufficient to support any such

claim.  Mr. Mayhew has not set forth factual allegations under § 38-40-105 of any unconscionable acts or practices, or identified which, if any, of the Defendants engaged in such purported acts.  For this reason, Mr. Mayhew's claim under C.R.S. § 38-40-105 is properly dismissed pursuant to Rule 12(b)(6).

   5.   Supplemental Jurisdiction

   Mr. Mayhew alleges jurisdiction over his "state-law claims is proper under the doctrine of Supplemental and /or Pendant [sic] Jurisdiction pursuant to 15 [sic] U.S.C. sec. 1367(a) and Fed. R. Civ. P. 18(a)."  (*See* Complaint at ¶ 34).  Having recommended dismissal of Mr. Mayhew's federal claims, the court further recommends that the District Court decline to exercise supplemental jurisdiction over the remaining state law claims under § 1367.  "The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  *See Lancaster v. Indep. Sch. Dist. No. 5*, 149 F.3d 1228, 1236 (10th Cir. 1998) (once "the bases for federal subject matter jurisdiction have been extinguished. . . , the district court may decline to exercise continuing pendent or supplemental jurisdiction over plaintiff's state claims").

G.   *Rooker-Feldman* Doctrine and/or *Younger* Abstention

   "Depending upon the vantage point and the stage in the foreclosure process, there are potentially two applicable doctrines of abstention, *Rooker-Feldman* and *Younger*, both of which allow a federal district court to defer to the state adjudicative

25

process." *Beeler*, 2007 WL 1346591 at * 2.

> The *Rooker-Feldman* doctrine, derived from the Supreme Court's
> decisions in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District
> of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), "prohibits
> federal suits that amount to appeals of state-court judgments." *Bolden v.
> City of Topeka*, 441 F.3d 1129, 1139 (10th Cir. 2006). The doctrine is
> grounded in Congress' grant of appellate jurisdiction to review state court
> decisions exclusively to the Supreme Court. As such, a claim inviting a
> federal district court to review and reverse an unfavorable state court
> decision is outside of a lower federal court's jurisdiction. *See, e.g.,
> Rooker*, 263 U.S. at 416.

*Rousseau*, 2009 WL at * 3. The *Rooker-Feldman* doctrine "applies in cases brought by

state court losers complaining of injuries caused by state court judgments rendered

before the district court proceedings commenced and inviting district court review and

rejection of those judgments." *Beeler*, 2007 WL 1346591 at * 2 (citing *Exxon Mobil

Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005).[7] The *Rooker-Feldman*

doctrine is applicable both to claims at issue in the state court order authorizing

foreclosure sale and to claims that are "inextricably intertwined" with that order.

*Exxon-Mobil*, 544 U.S. at 286, n. 1 ("[A] district court [can]not entertain constitutional

claims attacking a state-court judgment, even if the state court [did] not pass[ ] directly

on those claims, when the constitutional attack [is] inextricably intertwined with the state

---

[7]      In *Exxon Mobil Corp.*, the Supreme Court "clarified the reach of the
*Rooker-Feldman* doctrine" and "carefully prescribed the circumstances in which the
doctrine applies: (1) there was a state court action; (2) one party lost; (3) judgment
entered in the state court action against the losing party; (4) the losing party
commenced a new action complaining of injuries caused by the state court judgment;
and (5) the new action invited the district court to review and reject the state court
judgment." *Beeler*, 2007 WL 1346591 at * 3 n. 6 (citation omitted). The Supreme
Court "clarified in *Exxon-Mobil* that the *Rooker-Feldman* doctrine is confined to cases
brought after the state proceedings have ended." *Mann v. Boatright*, 477 F.3d 1140,
1146 (10th Cir. 2007) (internal quotation marks and citation omitted).

court's judgment.") (internal quotation marks and citation omitted).

To the extent that Mr. Mayhew's claims seek to challenge or reverse the completed state foreclosure action, the *Rooker-Feldman* doctrine acts to bar his claims. Mr. Mayhew's claims are admittedly at least partially brought for the purpose of challenging or reversing the Colorado state foreclosure proceedings that already took place. (*See* Complaint at ¶¶ 54-55). For example, Mr. Mayhew seeks injunctive relief for "reconveyance of the subject real property to Mr. Mayhew, or in the alternative [a] Final Judgment granting Mr. Mayhew Quiet Title in the subject property." (*See* Complaint at ¶ 80). Mr. Mayhew also seeks to enjoin "Defendants from proceeding with their unlawfully obtained and wrongly scheduled, 10:00A.M., February 4, 2009, Rule 120 foreclosure sale of Mr. Mayhew's personal residence, the real property of 307 LaBelle . . . ." (*See* doc. # 1 at p. of 30 of 35). Mr. Mayhew is attempting to obtain a ruling from this court that would, in effect, nullify or appeal state foreclosure proceedings that had occurred at the time of the filing of this action and that have since occurred. While Rule 120(d) states that an order authorizing a foreclosure sale is not an appealable judgment, "the applicability of *Rooker-Feldman* does not depend upon whether state court orders are appealable, but rather upon whether they completely determine the rights of the parties." *Beeler*, 2007 WL 1346591 at * 3 (citation and footnote omitted).

"The *Younger* abstention doctrine applies when there is an ongoing state court proceeding, the state court provides an adequate forum for determining the claims asserted in the federal action, and the proceedings involve important state interests which traditionally look to state law for their resolution or implicate separately articulated

27

state policies." *Beeler*, 2007 WL 1346591 at * 3 (internal quotation marks and citation omitted).  This civil action was initiated on the same date as the final foreclosure sale of the Property, after the issuance of the Rule 120 sale order, but before the issuance of a Trustee's Deed.

The court "is left with a single conclusion based upon alternative doctrines." *Beeler*, 2007 WL 1346591 at * 3.

> Arguably, either *Rooker-Feldman* or *Younger* is applicable.  If there was a final determination of the parties' rights at the time of the foreclosure sale of the property, for which the appropriate remedy is an independent action challenging the Rule 120 order, this Court must abstain pursuant to the *Rooker-Feldman* doctrine.  This is because the Court is being asked to conduct an appellate like review over the Rule 120 order authorizing the sale.  Alternatively, if there has been no final determination of the rights of the parties because the foreclosure process was not concluded, then the Court should abstain under the *Younger* doctrine.

*Beeler*, 2007 WL 1346591 at * 3.  "A federal court must decline to interfere with pending state proceedings involving important state interests unless extraordinary circumstances are present."  *Borkowski v. Fremont Inv. and Loan of Anaheim, Cal.*, 368 F. Supp. 2d 822, 828 (N.D. Ohio 2005) (concluding that the *Rooker-Feldman* doctrine, *res judicata*, or the *Younger* abstention doctrine precluded federal review of a state foreclosure matter).  "Actions that challenge the Rule 120 order and process are proceedings involving important state interests concerning title to real property located and determined by operation of state law."  *Beeler*, 2007 WL 1346591 at * 2 (citation omitted).  In sum, regardless of whether the foreclosure process had or has been concluded, this court is precluded from determining the issues presented.


H.      Defendants US Bancorp, Castle Meinhold & Stawiarski, LLC, Jennifer Rogers

The record shows no answer or other response by Defendants US Bancorp, Castle Meinhold & Stawiarski, LLC, or Jennifer Rogers.  Nevertheless, for all of the reasons explained in this Recommendation, above, Mr. Mayhew fails to state any claim for which relief can be granted as to these three Defendants and his claims against them are properly dismissed pursuant to Rule 12(b)(6).[8]

Accordingly, IT IS RECOMMENDED that:

1.      "Plaintiff's Verified Motion to Dismiss Action Against Certain Defendants Pursuant to Fed. R. Civ. P. 41" (filed July 9, 2009) (doc. # 98) be GRANTED and Defendants Mike Smith, Heather Bradshaw, Christine Rychlec, Whitney Winick, Bradley Davis, Brice, Vander Linden & Wernick, P.C., Joe Lozano, Britney Beall-Eder, P.C. Wolf, Ericka Olson, Lauren Smith, Guaranty Bank and Trust Company, Abby Larsen, CIT Group/Consumer Finance, Inc., Nationwide Title Clearing, Inc., Dusti Woodbury, Indymac Bancorp, Inc., Richard G. Gebhart, and John and Jane Does 1 through 1001 be DISMISSED voluntarily without prejudice.

2.      In light of this court's Recommendation to grant Mr. Mayhew's "Verified Motion to Dismiss Action Against Certain Defendants," thus dismissing voluntarily

---

[8]      Even if Mr. Mayhew had moved for default against these Defendants, it would remain "'for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.'" *Black v. Lane*, 22 F.3d 1395, 1407 (7th Cir. 1994) (quoting 10 Charles A. Wright et al., *Federal Practice & Procedure* § 2688, at 447-48 (2d ed. 1983).  *See also Weft, Inc. v. G.C. Investment Assocs.*, 630 F. Supp. 1138, 1143 (D.C.N.C.1986) ("upon a default, a plaintiff is entitled to a determination of liability unless he has failed to state a legal basis for relief or it is clear from the face of the complaint that the allegations are not susceptible of proof.").

Defendant P.C. Wolf, that "Defendant P.C. Wolf's Motion to Dismiss Pursuant [to] Rules 12(b)(2), 12(b)(5) and 12(b)(6), Fed. R. Civ. P." (filed April 3, 2009) (doc. # 33) be DENIED as moot.

3.    "Defendant Security Title Guaranty Co.'s Motion to Dismiss and Joinder in Various Co-Defendants' Pending Motions to Dismiss" (filed May 1, 2009) (doc. # 63) be GRANTED and Defendant Security Title Guaranty Co. be DISMISSED.

4.    "Defendant Brice, Vander Linden & Wernick, P.C. and Joe M. Lozano, Jr.'s Motion to Dismiss Complaint Pursuant to Fed. R. Civ. P. 12(b)(6), or, in the Alternative, Motion for Summary Judgment as to Claims Against Brice, Vander Linden & Wernick, P.C. and Joe M. Lozano, Jr." (filed April 17, 2009) (doc. # 47), joined by Defendant Wachovia Bank, N.A. on April 21, 2009 (doc. # 51) be GRANTED and Defendant Wachovia Bank, N.A. be DISMISSED.

5.    "Defendant Wells Fargo Bank, N.A.; Wells Fargo Asset Securities Corporation; Mortgage Electronic Registration Systems; Joan Mills, and Bradley Davis's Motion to Dismiss Pursuant to Rule 12(b)(6), Fed. R. Civ. P." (filed April 3, 2009) (doc. # 29), joined by Defendant Wachovia Bank, N.A. on April 21, 2009 (doc. # 51) and joined by Defendant Guaranty Bank and Trust Company on May 14, 2009 (doc. #73) be GRANTED and Defendants Mortgage Electronic Registration Systems, Wells Fargo Bank, N.A., Wells Fargo Asset Securities Corporation, Joan Mills, and Wachovia Bank, N.A. be DISMISSED.

6.    "Motion for a More Definite Statement and to Dismiss the Claims Against Ziel, Bradshaw, Rychlec, and Smith in their Individual Capacities" (filed March 31, 2009) (doc. # 24), joined by Defendant Wachovia Bank, N.A. on April 21, 2009 (doc. # 51) and

joined by Defendant Guaranty Bank and Trust Company on May 14, 2009 (doc. #73) be

GRANTED and Defendants Nora Ziel and Wachovia Bank, N.A. be DISMISSED.

7.      While the record shows no answer or other response by Defendants US

Bancorp, Castle Meinhold & Stawiarski, LLC, or Jennifer Rogers, that for all of the

reasons explained in this Recommendation, above, Defendants US Bancorp, Castle

Meinhold & Stawiarski, LLC, and Jennifer Rogers be DISMISSED.

8.      In light of this Recommendation that all claims and all Defendants be

dismissed, that this civil action be DISMISSED in its entirety.


**Advisement to the Parties**

*Within fourteen days after service of a copy of the Recommendation*, any party

may serve and file written objections to the Magistrate Judge's proposed findings and

recommendations with the Clerk of the United States District Court for the District of

Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583

(10th Cir. 1995).  A general objection that does not put the District Court on notice of the

basis for the objection will not preserve the objection for *de novo* review.  "[A] party's

objections to the magistrate judge's report and recommendation must be both timely

and specific to preserve an issue for de novo review by the district court or for appellate

review."  *United States v. One Parcel of Real Property Known As 2121 East 30th Street,*

*Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely

objections may bar *de novo* review by the District Judge of the Magistrate Judge's

proposed findings and recommendations and will result in a waiver of the right to appeal

from a judgment of the district court based on the proposed findings and

recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling);  *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado this 21st day of December, 2009.

BY THE COURT:

 s/ Craig B. Shaffer
United States Magistrate Judge